# Supreme Court of Texas

No. 24-0881

In the Interest of K.N., K.L., K.L., and K.L., Children

On Petition for Review from the
Court of Appeals for the Seventh District of Texas

CHIEF JUSTICE BLACKLOCK, concurring.

I join the Court's judgment and its opinion. The government's case against Father, which is largely derivative of Mother's failings, is clearly insufficient to support termination of Father's parental rights. I find Mother's case much more difficult. She treated her daughter "Karen" egregiously, but her defense is that she did so to discipline a misbehaving child, not to abuse or harm her. The government's case against Mother thus runs up against my conviction that parents are constitutionally entitled to discipline their children as they see fit. *In re A.M.*, 630 S.W.3d 25, 27 (Tex. 2019) (Blacklock, J., concurring) ("However far out of favor . . . traditional disciplinary measures may have fallen in some quarters, a parent's choice to employ them should be afforded no weight in a termination proceeding."). I nevertheless agree with the Court that termination of Mother's rights should be affirmed.

I do so on the basis of a crucial distinction, deeply rooted in the law, on which the Court rightly relies. *Ante* at 24–25. As reflected in an 1875 decision of this Court, the law has long recognized that a parent's "cruel, vicious, and outrageous" disciplinary actions with "intent to injure" may amount to "aggravated assault upon a child," which "exceed[s] the boundary of [the parent's] legal right as guardian under the law, and place[s the parent] in the attitude of a stranger and not a parent to the child." *Stanfield v. State*, 43 Tex. 167, 167–68 (1875). When a parent accused of mistreating her child responds that she was acting to discipline the child, as Mother does here, the question becomes whether the parent acted with criminal intent. An essential, threshold inquiry must be whether the parent acted with a genuinely *parental* motive (to modify the child's behavior or provide moral instruction) or with an illicit *criminal* motive (to injure the child).

It is not enough—not nearly enough—for a judge or jury to conclude, based on their personal opinions about disciplining children, that a parent's methods were excessive. The evolving sensibilities of modern judges and juries about appropriate disciplinary methods must not be permitted to encroach on the fundamental right of Texas parents to discipline their children as they see fit. This fundamental right is not evolving. It was fixed in place in the nineteenth century under societal norms highly deferential to parental authority, and it was recently reaffirmed by a constitutional amendment designed to "enshrine truths that are deeply rooted in this nation's history and traditions." TEX. CONST. art. I, § 37.

However, if clear and convincing evidence indicates that the parent acted against the child with a malicious, criminally culpable mental state—rather than a genuinely parental one—then forced severance of the legal bond between parent and child may be justified, assuming all other prerequisites for that harshest of remedies are met. In this case, I agree with the Court that the jury heard clear and convincing evidence that Mother's harsh, even vicious, treatment of her daughter was the product of malice and a desire to harm, rather than of genuine parental care and concern. That is why I join the Court's opinion and judgment.

\* \* \*

If a mother or father acts with parental intent rather than criminal intent, the family's internal affairs are generally none of the government's business. In another case, unlike this one, in which genuine parental intent is not questioned but the government merely alleges that the parent's choice of disciplinary methods was unduly harsh, we may need to rethink our usual approach to appellate review of the evidence. In such a case, protection of the parent's constitutional prerogatives may require appellate courts to apply something like the reverse of the typical presumption in favor of a jury's findings.

We normally uphold a verdict if any reasonable juror could have reached it. But when the excessiveness of parental discipline is the question before the jury, surely the rule cannot be that appellate courts will uphold the termination of parental rights if *any* reasonable juror could have thought the parent's actions crossed the line into child abuse. Reasonable people in today's world have wildly divergent opinions on

3

that topic. What sounds like reasonable old-fashioned discipline to jurors in Longview may sound like child abuse to jurors in Austin, but the constitutional rights of Texas parents do not vary from one jury pool to another.

A better rule may be the reverse of the conventional one: The courts *must* defer to a parent's fundamental right to discipline and control a child unless *no* reasonable observer could think the parent's actions fall within the bounds of legitimate discipline. What should matter is whether, objectively, a parent's disciplinary actions are altogether outside our society's historical conception of the broad realm of parental authority—not whether a parent's disciplinary actions are excessive in the opinion of the jurors (or the judge) who happen to be asked the question.

I hope we never need to confront this dilemma. This case does not require the Court to confront it because there is clear and convincing evidence that Mother acted out of criminal malice rather than parental love. If the question arises in the future, we should be prepared to rethink our conventional, deferential approach to appellate review of fact-findings. Parental-rights litigation must not be an invitation for judges and juries to second guess a parent's exercise of the constitutional right to discipline and direct a child.

James D. Blacklock
Chief Justice

**OPINION FILED:** June 5, 2026

4